**UNITED STATE DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

| | |
|---|---|
| **FRANK L. GARGETT, JR.**          ) | |
|                                     ) | |
| **Plaintiff,**          ) | |
|                                     ) | |
| **v.**          ) | **Case No.:** |
|                                     ) | |
| **FLORIDA DEPARTMENT OF**          ) | |
| **JUVENILE JUSTICE,**          ) | |
|                                     ) | |
| **Defendant.**          ) | |
|                                     ) | |

## COMPLAINT

Plaintiff, FRANK L. GARGETT, JR. (hereinafter "Plaintiff" and/or "Gargett," sues Defendant, FLORIDA DEPARTMENT OF JUVENILE JUSTICE (hereinafter "Defendant" and/or "FDJJ"), and alleges:

### Jurisdiction

1.      This civil action raises a federal question arising under the laws of the United States, under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C § 621, *et* seq and The Family Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. Sections 2611, *et seq.* and 42 U.S.C. § 1981a.

2.      This Court has original jurisdiction of this civil action under 28 U.S.C. § 1331.

3.      This Court has supplemental jurisdiction under 28 U.S.C. § 1367 for the Plaintiff's following state law claims under:  the Florida Civil Rights Act of 1992 ("FCRA"), Chapter 760, Florida Statutes; because the claims are so related to the federal claims in this action within the original jurisdiction of this Court that they form part of the same case or controversy under Article III of the United States Constitution.

1

**Venue**

4.      Plaintiff was a resident of Manatee County, Florida at the time of his termination and still resides in Manatee County, Florida.

5.      Plaintiff was employed by Defendant to perform his employment in Hillsborough County, Florida.

6.      Defendant does business throughout Florida: however, particularly the region that Plaintiff worked for was in the Central Region and Plaintiff worked out of the Hillsborough County office.

7.      Defendant has agents and managers conducting business in Hillsborough County, Florida, for the benefit of Defendant.

8.      Defendant is presently and was at the time this action was commenced subject to personal jurisdiction in Hillsborough County, Florida

9.      A substantial part, if not all, of the events or omissions giving rise to these claim and causes of action occurred in Hillsborough County, Florida.

10.     Venue lies in this Court and this District pursuant to 28 U.S.C. § 1391.

**Division**

11.     Hillsborough County, Florida is in the Tampa Division of the United States District Court for the Middle District of Florida.

12.     The Tampa Division of the United States District Court for the Middle District of Florida has the greatest nexus with this cause of action as the claim in this civil action arose in Hillsborough County, Florida and was employed by Defendant in Hillsborough County, Florida.

13.     This Tampa Division of the United States District Court for the Middle District is the proper division for this civil action pursuant to Rule 1.02(c) of the Rules for the United States

District for the Middle District of Florida.

## General Factual Allegations

14.     Plaintiff was hired by the FDJJ on or about November 20, 1998 as an Assistant Superintendent.

15.     He was promoted over the years and was a Regional Director for the FDJJ and after 19 years of exemplary service, he was wrongfully terminated on August 18, 2017 due to his age, taking and requesting FMLA and suffered retaliation for opposing the discriminatory treatment.

16.     At the time of Gargett's termination, he was fifty-seven (57) years old.

17.     Starting in January of 2016, Gargett felt he was being harassed by the FDJJ, specifically, his supervisor, Assistant Secretary Dixie Fosler, and he repeatedly complained about her harassment.

18.     Ms. Fosler regularly expressed her preference for a younger workforce and treated Gargett differently than younger employees.   Over the two year period prior to Gargett's termination, Ms. Fosler subjected Gargett to discriminatory and harassing comments based on his age, including, but not limited to, stating to him that she "wanted newer and younger "staff," that he was "old school," calling him a dinosaur," remarking that she wanted "out with the old and in with the new, and many other comments demonstrating an animus against Gargett because of his age.

19.     Gargett's complaints were ignored; however, the discrimination continued and they began retaliating against him, for example, but not by way of limitation, they reassigned him to the South Region in Miami for a period of time which caused significant hardship on Gargett and his family.

20.     In March of 2017, Gargett suffered a torn bicep and he subsequently alerted the FDJJ that his right arm would need surgery.

21.     Note that Gargett had been suffering from a serious knee issue which was related to a previous motor vehicle accident which eventually would need to be operated on after his torn bicep surgery.

22.     Ms. Fosler made it abundantly clear to Gargett that she was not happy with all of his medical issues.[1]

23.     Gargett advised that he would need to undergo surgery and that a recovery period would follow.

24.     Ms. Fosler's harassment escalated and she began falsely informing Gargett's co-workers and others in the Department that he had been terminated.

25.     Garget again notified others in the FDJJ, complaining about the continuing discriminatory and retaliatory treatment due to his age.[2]

26.     However, in response to his complaints, he was told by Deputy Secretary Niermann that Ms. Fosler was looking to try to terminate him supposedly for "performance issues" which Gargett inquired about and none were identified to him, nor had any issues ever been discussed with him.

27.     In May of 2017, Gargett formally applied for FMLA leave for his torn bicep and advised he would need to have his surgery scheduled as soon as possible.[3]

28.     On May 11, 2017, Gargett underwent surgery on his arm.

29.     On May 22, 2017, Gargett finally received the FMLA paperwork.

30.     Gargett completed and returned the paperwork on May 24, 2017 via email to Ms. Fosler,

---

[1] She had an animus towards Gargett related to his age, request for leave under FMLA, prior complaints of discrimination and/or relation for opposing the harassment and/or discrimination.

[2] He also complained about gender.

[3] His medical appointment was scheduled for May 5, 2017 and he was terminated on May 3, 2017 on the eve of his appointment. He filed a complaint and was offered to remain on duty until June 1, 2017 *if he resigned.* He declined to resign and filed another complaint and was allowed to use FMLA to address his medical issues.

Ms. Annette Carter, Ms. Whitley Waymon and blind-copied Mr. Niermann as he had serious concerns Ms. Fosler would not process the paperwork.

31.    In addition, Gargett reiterated to Mr. Niermann his ongoing mistreatment and harassment levied by Ms. Fosler towards him.

32.    Mr. Niermann confirmed receipt of his FMLA paperwork on May 24, 2017; however, he did not address Gargett's continuing complaints of discrimination, harassment and retaliation.

33.    FDJJ did not timely notify Gargett of the status of his FMLA request which is a clear violation of FMLA, as well as the FDJJ's own policy which requires the employer to designate whether the employee qualifies for leave under FMLA within five (5) days.

34.    Gargett repeatedly followed up to find out whether his FMLA request was granted and no one would respond to him.

35.    Ms. Fosler continued to target Gargett after his surgery, for example, but not by way of limitation, she sent him a letter in mid-June that the FDJJ did not receive his request for FMLA even though Mr. Niermann previously confirmed receipt who was blind-copied on the same email.[4]

36.    Due to Gargett's continued persistence, the FDJJ eventually approved his FMLA request in the middle of June, 2017.

37.    Gargett continued to voice his ongoing concerns that he was being discriminated and retaliated against further by the FDJJ; however, no action was taken.

38.    On July 7, 2017, Gargett met with his doctor and was released to return to work with a five (5) pound lifting restriction[5] and he provided the doctor's note to the FDJJ that same day indicating

---

[4] Ms. Fosler actually had Gargett's FMLA request sitting on her desk the entire time.
[5] We understand there is nothing in Gargett's job description requiring him to lift more than five (5) lbs; however, keep in mind the restriction was only temporary.

that he had been released and advised them that he was ready to return to work.

39.     Over the next ten days, Gargett repeatedly requested to return to work as soon as possible, light duty or otherwise, and that he would only need intermittent FMLA leave for follow-up doctor's appointments; however the FDJJ never responded.

40.     On July 17, 2017, Gargett again advised Mr. Niermann that he felt he was being retaliated against for using FMLA leave and reiterated his concerns over Ms. Fosler's harassment and discrimination.

41.     On July 17, 2017, the FDJJ finally advised Gargett that he would need to submit a fitness for duty from before being permitted to return to work and eventually provided Gargett with the paperwork for his doctor to complete, i.e., they waited ten (10) days before they advised him.

42.     On July 24, 2017, Gargett's doctor timely returned the completed paperwork indicating that Gargett was released to return to work.

43.     Upon receipt of the required paperwork, the FDJJ denied Gargett's request to return to work, denied his request for light duty and denied his request for intermittent FMLA leave.[6]

44.     The FDJJ granted Gargett annual leave from July 21st – July 30th and was told he could return to work July 31, 2017.

45.     On August 2, 2017, Gargett was advised that his options were to either sign a Settlement Agreement waiving all of his legal claims and accept a demotion to a newly created GOC-3 position in residential services with a 10% pay cut, loss of his SMS status and other paid benefits, *OR* that he would be terminated.

46.     On August 9, 2017, Gargett requested a leave of absence to undergo knee replacement

---

[6] This is contrary to FDJJ's well established practice of returning employees to work, providing light duty and allowing intermittent FMLA leave to others in similar circumstances.

during the period from September 1, 2017 to October 1, 2017.

47.    On August 11, 2017, the FDJJ instructed Gargett that he had until 5:00 p.m. on August 14, 2017 to agree to the demotion or that a final decision would be made regarding his employment status.

48.    Gargett refused to sign the Settlement Agreement and to accept a demotion.

49.    On August 18, 2017, Gargett was terminated.

50.    On August 18, 2017, Gargett was denied his request for FMLA leave for his knee replacement due to his termination.

51.    The FDJJ violated FMLA in so many ways, including, but not limited to, breaching FMLA and/or retaliating against Gargett for requesting and/or taking leave by: failing to timely designate Gargett's leave; requiring Gargett to remain on FMLA leave and use more FMLA leave than he needed even after he had been released to return to work; failing to reinstate him to the same or an equivalent position with the same pay, benefits, and other terms and conditions of employment after his FMLA leave; insisting that he sign a release in order to return to work; retaliating against him for requesting and taking FMLA; denying his FMLA request for knee replacement and most importantly, terminating him.

52.    Likewise, the FDJJ discriminated against him because of his old age and retaliated against him for his opposition to same which ultimately led to his termination.

53.    At all times material herein, Defendant was engaged in an industry affecting commerce and had more than 20 employees for each working day in each of 20 or more calendar weeks in 2017.

54.    Plaintiff was an eligible employee under FMLA entitled to 12 weeks of medical leave due to his serious health conditions that made him unable to perform the functions of his position, i.e.,

torn bicep and knee replacement.

55.     Defendant had 50 or more employees and was required to abide by the guidelines and protection provided to employees entitled to medical leave under FMLA and in addition, its own Policies and Procedures provided for such leave of absence.

## Conditions Precedent

56.     Plaintiff was terminated by Defendant on August 18, 2017.

57.     The EEOC received Plaintiff's Charge of Discrimination ("Charge") on December 26, 2017, a copy being attached as **Exhibit "A."**

58.     Plaintiff filed his Charge of Discrimination with the EEOC and the FCHR within 300 days of his wrongful termination.

59.     Plaintiff's Charge of Discrimination was timely filed.

60.     The EEOC issued its "Right to Sue" letter on or about July 26, 2019 a copy of the "Right to Sue" letter being attached as **Exhibit "B."**

61.     This action was filed on August 16, 2019, well within 90 days of the receipt of the "Right to Sue" letter.

62.     As for Plaintiff's FMLA action, this action was filed timely within two (2) years after the date of the last event constituting the alleged violation for which the action is brought; however, Plaintiff believes the violations were willful which would allow for three (3) years.

63.     This action was timely filed.

64.     All conditions precedent have occurred and/or have been waived.

## Attorney's Fees, Costs and Pre-judgment Interest

65.     Plaintiff has employed the undersigned attorney and agreed to pay him a reasonable attorney's fee and the costs of the action

66.     Plaintiff is entitled to have his attorney awarded a reasonable attorney's fees and the costs of the action if he prevails pursuant to the ADEA, 29 U.S.C.  § 626, which incorporates 29 U.S.C. § 216(b) of the Fair Labor Standards Act; the FCRA, § 760.11, Florida Statues and the Family Medical Leave Act.

67.     Plaintiff is entitled to costs and pre-judgment interest if he prevails.

### I.  Age Discrimination

### Count I
### (Age Discrimination, Title VII, Federal Law)

68.     This is an action for a discriminatory discharge because of age in violation of Title VII, as amended, 29 U.S.C § 621 *et seq*.

69.     Paragraphs 1-67 are re-alleged.

70.     Defendant discriminated against Plaintiff based upon his age in violation of the ADEA.

71.     As a result thereof, Defendant terminated Plaintiff.

72.      Defendant acted with malice or reckless indifference to the civil rights of Plaintiff.

        WHEREFORE, Plaintiff demands judgment for damages, including, but not limited to, back pay and lost benefits such as health, dental, vision and the 401k plan, future pecuniary losses, liquidated damages; front pay; reinstatement; attorney's fees, litigation fees and costs and pre-judgment interest; an injunction enjoining Defendant from engaging in discrimination; and, for such other affirmative action and equitable relief as appropriate.

### Count II
### (Age Discrimination, FCRA)

73.     This is an action for a discriminatory discharge because of age in violation of the FCRA.

74.     Paragraphs 1-67 are re-alleged.

75.     Defendant discriminated against Plaintiff based upon his age in violation of the FCRA.

76.     As a result thereof, Defendant terminated Plaintiff.

77.     Defendant acted with malice or reckless indifference to the civil rights of Plaintiff.

        WHEREFORE, Plaintiff demands judgment for damages, compensatory and punitive, including, but not limited to, back pay and lost benefits such as health, dental, vision and the 401k plan, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of dignity, loss of enjoyment of life, and any other non-pecuniary or intangible losses; front pay; reinstatement; attorney's fees, litigation fees and costs and pre-judgment interest; an injunction enjoining Defendant from engaging in discrimination; and, for such other affirmative action and equitable relief as appropriate.

## Count III
### (Retaliation for opposing Age Discrimination, ADEA)

78.     This is an action for a retaliatory discharge in violation of ADEA, 29 U.S.C. § 623(d).

79.     Paragraphs 1-67 are re-alleged.

80.      29 U.S.C. section 623(d) provides, "It shall be unlawful for an employer to discriminate against any of his employees ...because such individual ...has *opposed* any practice made unlawful by this section ...."

81.     Plaintiff complained and opposed the unlawful practice of age discrimination.

82.     As a result of Plaintiff's opposition to age discrimination, Defendant terminated Plaintiff.

83.     Defendant acted with malice or reckless indifference to the civil rights of Plaintiff.

        WHEREFORE, Plaintiff demands judgment for damages, including, but not limited to, back pay and lost benefits such as health, dental, vision and the 401k plan, future pecuniary losses, liquidated damages; front pay; reinstatement; attorney's fees, litigation fees and costs and pre-

judgment interest; an injunction enjoining Defendant from engaging in discrimination; and, for such other affirmative action and equitable relief as appropriate.

**Count IV**
**(Retaliation for opposing Age Discrimination, FCRA)**

84.    This is an action for a retaliatory discharge in violation of § 760.10(7), Florida States, the FCRA.

85.    Paragraphs 1-67 are re-alleged.

86.    Section 760.10(7), Florida States, the FCRA provides, "It is an unlawful employment practice for an employer ...to discriminate against any person because that person has *opposed* any practice which is an unlawful employment practice under this section ...." *(Emphasis added).*

87.    Plaintiff complained and opposed the unlawful practice of age discrimination.

88.    As a result of Plaintiff's opposition to age discrimination, Defendant terminated Plaintiff.

89.    Defendant acted with malice or reckless indifference to the civil rights of Plaintiff.

WHEREFORE, Plaintiff demands judgment for damages, compensatory and punitive, including, but not limited to, back pay and lost benefits such as health, dental, vision and the 401k plan, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of dignity, loss of enjoyment of life, and any other non-pecuniary or intangible losses; front pay; reinstatement; attorney's fees, litigation fees and costs and pre-judgment interest; an injunction enjoining Defendant from engaging in discrimination; and, for such other affirmative action and equitable relief as appropriate.

**II. Family Medical Leave Act**

**Count V**
**(FMLA Rights)**

90.    This is an action for violation of the FMLA rights.

11

91.     Paragraphs 1-67 are re-alleged.

92.      29 U.S.C. § 2615(a)(1) provides it shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter.

93.     Defendant violated FMLA by failing to timely notify Gargett of his eligibility status within five (5) days.

94.     Defendant violated FMLA by requiring him to remain on FMLA leave and use more FMLA leave than he needed after he had been released to return to work.

95.     Defendant violated FMLA and their own policy by refusing him to return to work with light duty.

96.     Defendant violated FMLA and their own policy by denying him intermittent leave.

97.     Defendant breached FMLA by insisting that he sign a release in order to return to work.

98.     Defendant violated FMLA by denying his request for FMLA for his knee replacement.

99.     Defendant refused to allow Plaintiff to return to work after his leave to be restored to the position of employment held by him when his leave commenced.

100.    Defendant refused to allow Plaintiff to return to work after his leave to be restored to an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment.

101.    Defendant violated FMLA when they terminated his employment because he refused to sign a Settlement Agreement and accept a demotion with decreased pay and benefits.

102.     As a result of the above breaches of FMLA, Plaintiff has been damaged.

        WHEREFORE, Plaintiff demands judgment for damages, including, but not limited to, wages, salary, employment benefits, or other compensation lost; interest on that amount; liquidated damages equal to the amount of the lost wages, salary, employment benefits, or other

compensation lost and interest thereon; and for any such equitable relief that may be appropriate, including, but not limited to, employment, reinstatement and promotion; and its reasonable attorney's fees, expert fees and other costs associated with this action.

**Count VI**
**(FMLA Discrimination)**

103. This is an action for discrimination under FMLA.

104. Paragraphs 1-67 and 93 - 102 are re-alleged.

105. 29 U.S.C. § 2615(a)(2) provides it shall be unlawful for any employer to discharge or in any other manner discriminate against any individual opposing any practice made unlawful by this subchapter.

105. As more particularly set forth above, Plaintiff repeated and continually complained of and opposed the FDJJ's violations of FMLA.

106. Defendant discriminated against Plaintiff for requesting and/or taking FMLA leave by unlawfully discharging his employment.

107. Plaintiff discriminated against Plaintiff for complaining and opposing the unlawful practices of Defendant's violations of FMLA which led to his termination and denial of his rights under FMLA as more particularly set forth above which were denied.

WHEREFORE, Plaintiff demands judgment for damages, including, but not limited to, wages, salary, employment benefits, or other compensation lost; interest on that amount; liquidated damages equal to the amount of the lost wages, salary, employment benefits, or other compensation lost and interest thereon; and for any such equitable relief that may be appropriate, including, but not limited to, employment, reinstatement and promotion; and its reasonable attorney's fees, expert fees and other costs associated with this action.

13

## **Demand for Jury Trial**

108.     Plaintiff demands a trial by jury on all issues so triable.


Dated: August 16, 2019.

> /s/ E. Dusty Aker
> E. Dusty Aker, Esq.
> Trial Counsel, Attorney for Plaintiff
> Fla. Bar.#: 657166
> AKER Law Firm, P.A.
> 240 S. Pineapple Ave., Ste. 803
> Sarasota, Fl 34236
> Phone: 941-462-2020
> Facsimile: 941-462-2022
> Email: dustyaker@akerlawfirm.com